NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Anthony NOVELLINO,<br><br>    Plaintiff,<br><br>    v.<br><br>NEW JERSEY DEPARTMENT OF CORRECTIONS MOUNTAINVIEW YOUTH CORRECTIONAL FACILITY, SCO P. ALVARADO, SCO R. STOCKER, SCO S. WEISEL, and John DOES 1-10,<br><br>    Defendants. | Civil No. 10-4542 (AET)<br><br>**OPINION** |

THOMPSON, U.S.D.J.

### I.  INTRODUCTION

This matter has come before the Court upon Defendants New Jersey Department of Corrections Mountainview Youth Correctional Facility ("MYCF"), Alvarado, Stocker, and Weisel's Motion to Dismiss and for Summary Judgment [docket # 11]. Plaintiff opposes the motion [14]. The Court has decided the motion upon the submissions of both parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons detailed below, Defendants' Motion to Dismiss is granted in part and denied in part, and Defendants' Motion for Summary Judgment is denied without prejudice.

### II.  BACKGROUND

This case involves a July 2008 incident during which Plaintiff Anthony Novellino, an inmate at Garden State Youth Correctional Facility, sustained injuries to his face and body

requiring medical treatment. (Compl. ¶ 13) [1-1]. Plaintiff alleges that he was beaten by three other inmates under the Defendants' supervision while he was restrained in handcuffs. (*Id.* at ¶¶ 10–12). Defendants dispute this account and maintain that Plaintiff's injuries were self-inflicted. (Br. in Supp. 5, 7.)

According to Plaintiff's Complaint, Plaintiff submitted a "Canteen Form" to Defendant Alvarado on July 10, 2008, and was informed the following day that his Form had been voided. (Compl. at ¶¶ 7–8.) Plaintiff "confronted Defendant Alvarado" regarding why this happened and was subsequently restrained by Defendants Alvarado, Stocker, and Weisel. (*Id.* at ¶ 4.) Plaintiff claims that Defendants Alvarado, Stocker, and Weisel "signaled" inmates to beat Plaintiff, and that these Defendants "turned their backs to [him] and allowed the abuse to continue." (*Id.* at ¶¶ 11–12.) As a result, Plaintiff suffered injuries to his face and body that required medical treatment and caused him "severe embarrassment and fear." (*Id.* at ¶ 13.)

According to the Defendants, Plaintiff grew hostile when Defendant Stocker informed him that his canteen was void, and refused Stocker's direct order to "lock in" by approaching Defendant Alvarado. (Defs.' Statement of Material Facts ("SMF") ¶¶ 6–7) [11-1]. Defendants also assert that after Alvarado said he was going to write up a "charge" against Plaintiff for his non-compliance, Plaintiff stated that he would "fuck up [Alvarado's] Puerto Rican ass." (*Id.* at ¶¶ 8–9.) Other officers then called out a "Code 33" Emergency and, upon their arrival, heard Plaintiff further threaten Alvarado with bodily harm. (*Id.* at ¶ 11.) At this point, Defendant Weisel secured Plaintiff in handcuffs. (*Id.* at ¶ 12.) Defendants claim that Plaintiff then slammed his own head on a grill gate, thereby cutting his lip, and that he was escorted away to prevent further injury. (*Id.* at ¶¶ 12–13.) When Sergeant Murray arrived on the scene and asked how Plaintiff's mouth was injured, Plaintiff stated that he was jumped by a couple of African-American inmates. (*Id.* at ¶¶ 16–18.) However, a "knuckle check" of the inmates present at the

time revealed no injuries indicative of any involvement in a fight or assault. (*Id.* at ¶ 22.) Additionally, Plaintiff has refused to take a polygraph examination regarding the incident, and he has no witnesses to support his account of the incident. (*Id.* at ¶¶ 32–33.)

Plaintiff filed the Complaint in New Jersey Superior Court on July 16, 2010, alleging violations of the Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983, as well as violations of the New Jersey Constitution and the New Jersey Civil Rights Act ("NJCRA"). Specifically, Plaintiff alleges that the individual Defendants engaged in a conspiracy to deprive him of his rights to due process and equal protection under 42 U.S.C. §§ 1983 and 1985, (Compl. ¶ 15); that Defendant MYCF failed to prevent the constitutional violations committed by the individual Defendants, (*id.* at ¶¶ 17–21); that the Defendants committed "unlawful and malicious detention and confinement" in deprivation of Plaintiff's rights to due process and equal protection (*id.* at ¶ 23); that the Defendants were "deliberately indifferent to Plaintiff's health or safety" in violation of the Eighth and Fourteenth Amendments, (*id.* at ¶ 25); that the Defendants have violated his right to "liberty, due process of law, and the right to be free from cruel and unusual punishment" under the New Jersey Constitution, (*id.* at ¶ 28); and that the Defendants are liable for all of the above violations under the NJCRA, (*id.* at ¶ 30).

Defendants removed the action to this Court on September 3, 2010, based on federal question jurisdiction under 28 U.S.C. § 1331. (Notice of Removal ¶ 3) [1]. On April 4, 2011, Defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and for Summary Judgment under Fed. R. Civ. P. 56.

III.     ANALYSIS

A. Legal Standard for Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), the defendant bears the burden of showing plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). A district court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotation marks omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is facially plausible. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Facial plausibility exists where the facts pled allow the court reasonably to infer that "the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

B. Immunity and Jurisdictional Arguments

Defendants raise a number of arguments as to why they are immune from this lawsuit, including Eleventh Amendment immunity, the definition of "person" under 42 U.S.C. § 1983, qualified immunity, and Tort Claims Act ("TCA") immunity. We will address these arguments before proceeding to the merits.

1. Eleventh Amendment Immunity

Defendants argue that MYCF is immune from suit under the Eleventh Amendment. (Br. in Supp. 10–12.) There does not appear to be any dispute that, as a New Jersey Department of

Corrections facility, MYCF is a state agency protected by Eleventh Amendment immunity. *See, e.g. Vance v. Rizzo*, No. 06-0672, 2006 WL 2786867, at *3 (D.N.J. Sept. 26, 2006) (dismissing claims against MYCF based on Eleventh Amendment immunity). However, MYCF's removal of this action to federal court constituted consent to suit and thereby waived MYCF's immunity. *See Lombardo v. Commonwealth of Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 198 (3d Cir. 2008) (stating that "removal of federal-law claims to federal court effect[s] a waiver of immunity from suit in federal court"); *see also Lapides v. Bd. Of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (finding that state waived sovereign immunity by voluntarily removing case to federal court, but limiting holding to state law claims given dismissal of federal claims). Accordingly, we will deny Defendants' motion to dismiss MYCF based on Eleventh Amendment immunity.

## 2. Suits Against State or Its Officials Under 42 U.S.C. § 1983

Defendants argue that Plaintiff's § 1983 claims must be dismissed because they are not "persons" within the purview of that statute. (Def.'s Br. in Supp. 12.) While Defendants are correct that the §1983 claims against MYCF must be dismissed on this basis, we find that the case may proceed against the individual Defendants.

Section 1983 provides an individual Plaintiff with a private cause of action where a state official has violated that individual's constitutional or statutory rights. The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58,

71 (1989). Also excluded from § 1983's purview are "governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes[.]" *Id.* at 70. However, "[s]tate officials sued in their individual capacities are 'persons' for purposes of § 1983." *Walker v. Beard*, 244 F. App'x 439, 440 (3d Cir. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)).

Having determined that MYCF is an arm of the state entitled to Eleventh Amendment immunity, we find that the same analysis demonstrates that it is not a "person" under § 1983. Accordingly, even though MYCF has waived its Eleventh Amendment immunity, we must dismiss the § 1983 claims against MYCF because it is excluded from § 1983's scope. With respect to Defendants Alvarado, Stocker, and Weisel, the caption of the Complaint indicates that they are being sued "personally and in their official capacities." (*See* Compl. 1) [1-1]. Applying the legal principle set forth in *Will*, the Court will dismiss Plaintiff's § 1983 claims against these Defendants in their official capacities. However, the § 1983 claims may proceed against these Defendants in their individual capacities.

### 3. Qualified Immunity

Defendants argue that the Complaint must be dismissed because they are entitled to qualified immunity. (Def.'s Br. in Supp. 23–27.) We disagree.

Qualified immunity is a defense that "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ray v. Twp. of Warren,* 626 F.3d 170, 173 (3d Cir. 2010) (quoting *Pearson v. Callahan,* --- U.S. ---, 129 S. Ct. 808, 815 (2009)). A court addressing a qualified immunity defense must examine: (1) "whether the plaintiff has alleged a deprivation of a constitutional right at all[;]" and (2) whether the right at issue was "clearly established at the time of defendant's alleged misconduct." *Pearson,* 129 S. Ct. at 816.

Qualified immunity shields from liability those officers who mistakenly, but reasonably, believed their actions were lawful. *Id.*

Plaintiff's Complaint alleges that "Defendants' actions of commanding and ordering three or more (3) inmates to viciously beat Plaintiff while Plaintiff was restrained in handcuffs, exhibit[ed] deliberate indifference to Plaintiff's health or safety," and that "Defendants knew of the substantial risk to Plaintiff's health by the obvious risks involved with their actions and acted or failed to act in light of those known risks." (Compl. ¶¶ 25–26.) These allegations sufficiently state a deliberate indifference claim, so Plaintiff has adequately alleged a deprivation of his Eighth Amendment rights. *See, e.g.*, *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d. Cir. 1997) (stating that the Eighth Amendment imposes a "duty on prison officials to take reasonable measures 'to protect prisoners from violence at the hands of other prisoners'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994))). Furthermore, at the time of the July 2008 incident, it was clearly established that prison officials may be held liable for their failure to prevent other inmates from attacking a particular inmate. *See, e.g.*, *Farmer*, 511 U.S. at 833 (setting forth requirements of inmate failure-to-protect claim); *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (reversing dismissal of inmate's failure-to-protect claim). Thus, viewing the facts in the light most favorable to the Plaintiff, we find that a reasonable official would have known that it was unlawful to command other inmates to beat an inmate in that official's custody.

Accordingly, the Defendants cannot claim qualified immunity.

### 4. Tort Claims Act ("TCA") Immunity

We need not address Defendants' TCA immunity argument at length, because the TCA only immunizes public entities and employees from liability for state law tort claims, and Plaintiff's Complaint does not include such claims. *See Islam v. City of Bridgeton*, No. 08-1844, 2011 WL 1205277, at *5 (D.N.J. Mar. 28, 2011) (stating that "because of the federal

constitution's Supremacy Clause, th[e TCA] does not apply to federal claims" (citing *Tice v. Cramer*, 627 A.2d 1090, 1105 (N.J. 1993))); *id.* at *8 (stating that TCA "does not grant public employees immunity from suits under rights of action provided by the New Jersey Constitution, nor from suits under the NJCRA").

### C. Arguments on the Merits

Having concluded that the individual Defendants are subject to suit and are not otherwise shielded by any immunity based on the facts pled in the Complaint, we will proceed to address the substantive claims raised by Plaintiff.

#### 1. Deliberate Indifference

Defendants argue in their moving papers that they were not deliberately indifferent because Plaintiff's injury was actually self-inflicted and because Plaintiff has not alleged that "Defendants knew of and disregarded" any risk to his health and safety. (Br. in Supp. 17.) In order to establish a "failure to protect claim," an inmate must demonstrate that: "(1) he is 'incarcerated under conditions posing a substantial risk of serious harm;' and (2) the prison official acted with 'deliberate indifference' to his health and safety." *Jones v. Beard*, 145 F. App'x 743, 745 (3d Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). Contrary to Defendants' assertions, Plaintiff has alleged that "Defendants knew of the substantial risk to Plaintiff's health by the obvious risks involved with their actions and acted or failed to act in light of those known risks." (*See* Compl. ¶¶ 26.) And Plaintiff's allegation that the Defendants "signaled three (3) or more inmates to beat Plaintiff[,]" (*id.* at ¶ 11), sufficiently states a factual basis for finding that the Defendants were deliberately indifferent to Plaintiff's health and safety. Thus, we will allow this claim to proceed.

#### 2. Conspiracy Under 42 U.S.C. § 1985

Defendants argue that Plaintiff fails to state a conspiracy claim under 42 U.S.C. § 1985(3).

(Br. in Supp. 17.) We agree and accordingly dismiss this claim.

Section 1985(3) permits actions against conspiracies that are formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" 42 U.S.C. § 1985(3). In order to survive a motion to dismiss, conspiracy allegations "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009). Moreover, a plaintiff bringing a § 1985(3) claim must allege both "that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing *Aulson v. Blanchard*, 83 F.3d 1, 4–5 (1st Cir. 1996). To do so, a plaintiff may rely on a "class of one" theory by alleging that that a defendant intentionally and with no rational basis treated him differently from others similarly situated. *Pantusco v. Sorrell*, No. 09-3518, 2011 WL 2148392, at *7 (D.N.J. May 31, 2011) (quoting *Hill v. Borough of Kurtztown*, 455 F.3d 225, 239 (3d Cir. 2006)); *accord Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff's Complaint alleges that "[a]s a result of their [sic] concerted unlawful and malicious conspiracy of Defendants Alvarado, Weisel, and Stocker, Plaintiff was deprived of both his liberty without due process of law and his right to equal protection of the laws . . . ." (Compl. ¶ 15.) Beyond using the word "conspiracy," Plaintiff fails to allege any facts suggesting that an agreement existed between Defendants to deprive him of his constitutional rights. The Complaint merely alleges that "Alvarado, Weisel, and Stocker signaled three (3) or more inmates to beat Plaintiff . . . [and] turned their backs to Plaintiff and allowed the abuse to continue." (*Id.* at ¶ 12–13.) Although this allegation reflects concerted action, it does not rise to the level of an agreement. *See Prince v. Aiellos*, No. 09-5429, 2010 WL 4025846, at *7 (D.N.J. Oct. 12, 2010)

("It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." (citing *Spencer v. Steinman*, 968 F. Supp. 1101, 1020 (E.D. Pa. 1997))). Additionally, Plaintiff fails to allege animus against an identifiable class or against himself as a "class of one," or that the animus was invidious. Thus, we must dismiss the § 1985(3) conspiracy claim alleged in Count I for failure to state a claim.

### 3. Conspiracy Under 42 U.S.C. § 1983

Plaintiff also appears to bring a § 1983 conspiracy claim. (*See* Compl. ¶ 15.) To properly state a § 1983 conspiracy claim, a plaintiff must allege that "persons acting under color of state law conspired to deprive him of a federally protected right." *Perano v. Twp. of Tilden*, No. 10-2393, 2011 WL 1388381, at *4 (3d Cir. Apr. 13, 2011) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 245 (3d Cir. 1999)). As with § 1985(3) claims, a § 1983 conspiracy claim requires a "'meeting of the minds.'" *Prince*, 2010 WL 4025846, at *7 (quoting *Startzell*, 533 F.3d at 205). For the same reasons as stated above with respect to Plaintiff's § 1985(3) claim, we must dismiss the § 1983 conspiracy claim in Count I because Plaintiff has failed to adequately allege the elements of a conspiracy.

### 4. Equal Protection

Defendants assert that Plaintiff's equal protection claim must fail because he has failed to allege that "he was similarly situated to, and treated differently from, other inmates." (Br. in Supp. 20.) It is unclear whether Plaintiff is asserting a freestanding equal protection claim, but if so, the claim is dismissed.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To prevail on an equal protection claim, a plaintiff must present evidence that s/he has

been treated differently from persons who are similarly situated." *Renchenski v. Williams,* 622 F.3d 315, 337 (3d Cir. 2010) (quotations and citations omitted). However, disparate impact alone is insufficient and a plaintiff must show that discriminatory intent was a motivating factor, although it need not be the sole motivating factor. *Conquest v. Hayman*, No. 07-2125, 2011 WL 1322153, at *15 (D.N.J. Mar. 31, 2011) (citing *Vill. of Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977)). Prisoners are not members of a suspect class, s*ee Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001), so classifications applied to prisoners are upheld if they have a rational basis, *Renchenski*, 622 F.3d at 337. Accordingly, as noted above, an individual inmate plaintiff may assert a "class of one" theory. *See Pantusco v. Sorrell*, No. 09-3518, 2011 WL 2148392, at *7 (D.N.J. May 31, 2011) (quoting *Hill v. Borough of Kurtztown*, 455 F.3d 225, 239 (3d Cir. 2006)); *accord Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff's Complaint alleges that, "[a]s a result of their [sic] concerted unlawful and malicious conspiracy of Defendants Alvarado, Weisel, and Stocker, Plaintiff was deprived of both his liberty without due process of law and his right to *equal protection* of the laws . . . ." (Compl. ¶ 15.) The Complaint also alleges that, "[a]s a result of their concerted unlawful and malicious detention and confinement of Plaintiff, Defendants deprived Plaintiff of both his right to his liberty without due process of law and his right to *equal protection* of the laws . . . ." (Compl. ¶ 22 (emphasis added).) However, Plaintiff fails to allege the existence of similarly situated individuals or that he was treated differently from those individuals. Plaintiff also fails to allege that discriminatory intent was one of the factors motivating Defendants' alleged actions. Thus, Plaintiff's equal protection claim must be dismissed.

### 5. Due Process

Defendants argue that Plaintiff's due process claim must be dismissed because this case does not involve conditions of confinement. (Reply Br. 6–7.) As with Plaintiff's equal protection claim, it is unclear whether Plaintiff seeks to bring a freestanding due process claim, but if so, this claim is dismissed.

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The core concept of due process has evolved into substantive and procedural components. *See Evans v. Sec. of Pa. Dep't of Corr.*, No. 09-2657, 2011 WL 1833237, at *5 (3d Cir. May 16, 2011) (describing substantive and procedural due process theories).

Plaintiff's Complaint alleges a due process violation in Count I, based on Defendants' "concerted unlawful and malicious conspiracy." (Compl. ¶ 15.) Having concluded that Plaintiff has failed to allege the elements of a conspiracy, we must dismiss this due process claim to the extent that it is based on Defendants' purported "conspiracy."

Plaintiff further alleges a due process violation in Count III, based on Defendants' "concerted unlawful and malicious detention and confinement[.]" (*Id.* at ¶ 23.) We interpret "detention and confinement" as referring to the preceding paragraphs in the Complaint stating that "Plaintiff was restrained by Defendants Alvarado, Weisel, and Stocker" and that "three (3) or more inmates . . . beat Plaintiff with their fists and feet while Plaintiff was restrained in handcuffs." (*Id.* at ¶¶ 10–11.) This claim best characterized as alleging a substantive due process violation. *See, e.g.*, *Williams-El v. Johnson*, 872 F.2d 224, 229 (8th Cir. 1989) ("Prison-beating and police-brutality cases have long been brought under the Due Process Clause as violations of substantive, not procedural, due process. These cases involve deprivations of liberty that cannot be legitimized no matter how much process is given."). Because Plaintiff's substantive due

process claim—that Defendants handcuffed him to allow other inmates to beat him—fits squarely within his Eighth Amendment deliberate indifference claim, this due process claim must be dismissed under the "more specific provision rule." *See Betts v. New Castley Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (stating that, under "more-specific provision rule," constitutional claim covered by specific provision such as Eighth Amendment must be analyzed "under that specific provision, not under the rubric of substantive due process" (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.2 (1997))).

### 6. New Jersey Civil Rights Act ("NJCRA")

Plaintiff alleges that Defendants "deprived, interfered and/or attempted to interfere by threats, intimidation and/or coercion with the Plaintiffs substantive due process and/or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or . . . the Constitution or laws of this State" in violation of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.* (Compl. ¶ 30.) Defendants move to dismiss this claim on largely the same immunity grounds as argued above with respect to their federal claims. (*See* Br. in Supp. 28–39.)

The New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1 *et seq.*, is a state law analogue to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured by the Constitution and laws of the state of New Jersey and the Constitution and laws of the United States. Accordingly, the NJCRA is generally interpreted to be coextensive with its federal counterpart. *See Celestine v. Foley*, No. 10-1775, 2010 WL 5186145, at *6 (D.N.J. Dec. 14, 2010); *Jefferson v. Twp. of Medford*, No. 08-6269, 2010 WL 5253296, at *13 (D.N.J. Dec. 16, 2010); *Chapman v. New Jersey,* No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009);

Having dismissed the § 1983 claims against MYCF because it is not a "person," we must dismiss the NJCRA claims against MYCF for the same reason. Defendants Alvarado, Stocker,

and Weisel's qualified immunity arguments are denied for the same reason as stated above with respect to the § 1983 claims: a reasonable official would have known that it was unlawful to command other inmates to beat an inmate in that official's custody. However, to the extent Plaintiff asserts equal protection and due process claims under the NJCRA against the individual Defendants, these claims are dismissed for the same reasons as stated above regarding Plaintiff's equal protection and due process claims under § 1983.

### 7. Punitive Damages Claim

Defendants have moved to dismiss Plaintiff's request for punitive damages. (Br. in Supp. 28); (Reply Br. 7). Punitive damages are available for § 1983 claims "not only where there was a malicious intent or evil motive, but also where the defendants acted with 'a reckless or callous disregard of, or indifference to, the rights and safety of others.'" *Bennis v. Gable*, 823 F.2d 723, 734 (3d Cir. 1987) (quoting *Smith v. Wade*, 461 U.S. 30, 33 (1983)). Because we find Plaintiff's deliberate indifference claim to have been adequately pled, it would be inappropriate to rule out his request for punitive damages. Therefore, we will deny Defendants' motion to dismiss Plaintiff's request for punitive damages.

### 8. New Jersey Constitution, Article I, Paragraphs 1 and 12

Because Defendants have not moved for dismissal of Plaintiff's claims under the New Jersey Constitution in Count V, we need not analyze these claims at this time, particularly because we are allowing Plaintiff's deliberate indifference claim to proceed. *See Jumpp v. Power*, No. 08-4268, 2009 WL 1704307, at *4 (D.N.J. June 18, 2009) ("Courts in this District have recognized that the Eight[h] Amendment and the parallel paragraph in the New Jersey Constitution have been interpreted to provide congruent relief in the deliberate indifference context." (collecting cases)).

### D. Motion for Summary Judgment

The Court notes that Defendants' motion is framed as a Motion to Dismiss pursuant to

Fed. R. Civ. P. 12(b)(6), or in the alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 56. (*See, e.g.*, Br. in Supp. 2.)  Although Defendants have attached various documents to their moving papers, Plaintiff has not submitted any evidence, and discovery has not yet been conducted in this case.  Because the disparities between Plaintiff's Complaint and Defendants' motion present disputed issues of material fact, we will deny without prejudice Defendants' motion for summary judgment at this early stage.  *See Vance v. Rizzo*, No. 06-672, 2006 WL 2786867, at *3 (D.N.J. Sept. 26, 2006) (denying summary judgment as improper at "early stage of case" where "no discovery ha[d] occurred"); *accord Brown v. Metcalf*, 366 F. App'x 621, 623–24 (6th Cir. 2010) (finding no appellate jurisdiction where district court's denial of summary judgment on qualified immunity grounds was based on disputed issue of material fact).  Given that no discovery has been conducted yet, we will not require Plaintiff to file a Rule 56(d) affidavit stating his inability to "present facts essential to justify [his] opposition[.]"  Fed. R. Civ. P. 56(d); *see Reed v. Staniero*, No. 06-3496, 2007 WL 3430935, at *7 (D.N.J. Nov. 13, 2007) (distinguishing for purposes of Rule 56(f)—now codified as 56(d)—between cases where "further discovery is sought" and cases "where no meaningful discovery has taken place").

## IV.    CONCLUSION

     For the reasons stated above, and for good cause shown, Defendants' Motion to Dismiss is granted in part and denied in part, and Defendants' Motion for Summary judgment is denied without prejudice.  An appropriate order will follow.

                                            ___*/s/ Anne E. Thompson*_____
                                            ANNE E. THOMPSON, U.S.D.J.

Date_____July 28, 2011_____